Yes, if it pleases the Court, Edward S. McLellan from Clackamas County. Your Honors, about a week and a half ago, you issued an order for us to address jurisdiction in the two cases involving Clackamas County. Unfortunately, that order came just as I entered a jury trial that ended yesterday at 3, so I'm a little unprepared. But I have reviewed the jurisdictional issue I've discussed with counsel for Mr. Skoog, and we believe the Court is probably correct that there is not jurisdiction on those two appeals, or on the part of the appeal. That would be in 35-286, the part appealing the denial of summary or amendment as to Clackamas County. And in – The motion to – the final motion for leave to amend the complaint. Right. There's really – And then in 35-568, we would only ask that there's some procedure available for us to bring this case back to the District Court and get the proper judgment entered, and expedite an appeal back up since it's fully briefed and ready to go. I don't know that there is one. I couldn't find one. On which issue were you talking about? On the appeal. On which issue? Oh, on the refusal, denial of the Fourth Amendment complaint. Well, if we dismiss a no jurisdiction, you can appear in the District Court and do whatever you think is appropriate and get the District Court to do whatever it thinks is appropriate. And then you'd have to address our court if you want an expedited appeal or whatever. Thank you, Your Honor. With that concession, I believe there's nothing else for me to say. I'll let the State have the rest of the time that I have reserved. Okay. On behalf of Mr. Royster. I guess Skoog agrees with that. Yeah. Please, the Court. I'm Rolf Mohn from the Oregon Department of Justice. I represent defendant Herbert Royster, who is an Oregon State police officer. You have a no locatory appeal on the denial of qualified immunity. It's the motion for qualified immunity on all claims. That's correct. That's correct. And in this case, with respect to all except one of plaintiff's claims against Mr. Royster, the District Court granted summary judgment on qualified immunity grounds. The District Court failed to grant summary judgment only with respect to plaintiff's claim that Mr. Royster violated his rights by seeking a search warrant for what's been described as a still camera possessed by Mr. Royster, possessed by a plaintiff in his office. The District Court erred by not granting summary judgment on qualified immunity grounds on that claim as well. Could you help me understand the plaintiff's claim? And maybe these questions are more appropriately directed to Mr. Royster and counsel for Mr. Skoog. But I understand with the District Court, the result of what the District Court did was it left Mr. Skoog first amendment retaliation claim intact. Is that right? With respect only to the camera. To the still camera. The still camera. Correct. There were other aspects of the retaliation claim that the District Court did grant summary judgment. So under the Sancier qualified immunity analysis, the first question is, does assuming the facts, taking the facts in light, most favorable to Mr. Skoog, does he state a constitutional violation? Correct. Okay. What's your answer to that? He has not stated a constitutional violation because the ---- He hasn't stated a first amendment violation. That's correct. Why not? Well, because ---- I thought it was pretty well established that, you know, the government can't go around retaliating against somebody for exercising their first amendment right. Well, in general, that's true. But the analysis changes if, as in this case, the officer who is engaged in the conduct at issue has probable cause. In this case, probable cause is the search warrant. But does that define the constitutional right that's at issue? Or does that get down, as you go down the Sancier analysis, you go, is there a constitutional right here? You know, if he proved these facts, could it establish a violation of the Constitution here in the First Amendment? It certainly could. And then you go to the second question, is the law clearly established? Even if the law is clearly established under the facts here, could a reasonable officer be mistaken in his assessment of his conduct? It's pertinent to each step in the analysis. The reason I say that is that no constitutional violation occurred, despite any retaliatory motive the officer might have had that otherwise might implicate first amendment rights. Well, you ought to describe the facts you're making that concession on, because I want to make sure I understand the facts when I do the Saucier analysis. What are the facts you think that we should be considering? The facts that are pertinent, first, are those facts that weigh on whether Mr. Royster had probable cause to believe that the plaintiff had violated ORS 165540. If he had probable cause, then the existence of some retaliatory motive isn't pertinent. So what are the probable cause facts that we should consider? The facts are, and these are uncontroverted, that, well, first of all, first informing the participants that the conversation is being recorded. And that recording, ostensibly, was through the video camera, not the still camera, and the first amendment basis is the still camera shots, right? That's correct, although the plaintiff has also made a retaliation first amendment claim based on the seeking of the search warrant generally, including... The district court rejected that. Correct, correct, and it did so correctly. Okay. So the facts that are pertinent to the probable cause analysis are the uncontroverted facts that the plaintiff was using a video camera to record Mr. Royster's activities at a convenience store. Mr. Royster then engaged in some conversation with the plaintiff. At some point, Mr. Royster informed the plaintiff that it was illegal to record a conversation without informing the participant. He then asked the plaintiff, quote, Those facts establish probable cause to believe that the plaintiff had, in fact, violated ORS 165540. Now, that's as to the video camera. Yes, and had violated the statute by... And the only issue here is what happened with the still camera. Correct. How did he get there? The still camera became pertinent once Mr. Royster visited the plaintiff's business to try to obtain a copy of the videotaped conversation. In the office, the plaintiff purported to make a copy of the videotaped conversation. He connected his video camera to his computer. Mr. Royster could hear his voice as it had been recorded when the tape was played on the computer. The plaintiff then gave what was supposed to be a copy of the conversation to Mr. Royster. It turned out that copy did not contain the recorded conversation. It contained only the first 14 seconds of footage. It did not contain any conversation. And while Mr. Royster was in Plaintiff's business, the plaintiff had also used the still camera to take photographs, apparently to document Mr. Royster's presence in his office. As Mr. Royster noted in his search warrant affidavit, the still camera thus would have contained... Go ahead. I have a little time. Judge Nelson with the clock. Okay. We had... I don't know what the time was. It was about 14 minutes, I think. It may have been a little less. I will cut you off when we've had enough. Sounds more than fair. Yeah, okay. We're back running now. So the still camera, as Mr. Royster noted in his affidavit, would have contained photographs of the layout of Plaintiff's business, would have contained photographs showing the type of video camera that had been used, would have contained photographs showing the type of computer that had been used to connect the video camera and to make the copy. Well, that may all be true, but somewhere, then, you're going to have to help me. Somewhere I thought I read the facts that because there had been a prior DUI, the dispute regarding the DUI and the subsequent action,  that Mr. Royster, I mean Mr. Skoog, had used his still camera to record what the police were doing relative to that suit. And I thought that there was somewhere in this that when the office visit was made that the camera was being used as an extenuation of that investigation or attorney-client privilege or whatever, Mr. Skoog was using the camera relative to the DUI suit. Have I missed something? There is some evidence suggesting he may have been using the still camera. Well, for purposes of the DUI suit, there's nothing to suggest that Mr. Royster, at the time he first visited the office, necessarily knew that fact. Although, at some point, someone did inform Mr. Royster that plaintiff had been taking photographs of officers. But again, that doesn't matter for the analysis when we're assessing whether Mr. Royster had probable cause or whether he violated plaintiff's right. Like a retaliation First Amendment suit, doesn't that relate to the still camera being used to substantiate his case relative to DUI? That's the thing I'm having a problem with. Well, it may also be pertinent to that claim. The fact is, though, that Mr. Royster did have probable cause to believe the still camera supported the claim that the plaintiff had violated ORS 165540. So you're saying under Saussure, under what level of Saussure, then, do we analyze that particular discrete issue? Well, again, that discrete issue is pertinent to each level of Saussure. But first, it's pertinent to determining whether any constitutional violation could have occurred in the first place with respect to plaintiff's First Amendment rights. Excuse me, gentlemen, one second. I want to just at least revert back to a manual method. The iPod generation just failed. Right. All right. So we had about nine and a half minutes, I believe. Yeah. So we can just – we'll just – And I am hoping to reserve roughly three minutes for your – Okay. Okay. We'll try and keep an eye on it. And we'll use our watch. Yeah. We have our watches here in operation. Maybe we can just shut that thing down. 936. Okay. Anyway, Your Honor, if Mr. Royster had probable cause to believe that the camera was pertinent to any violation of 165540, then any retaliatory motive did not affect the lawfulness of his conduct. Wait a minute. That – frame the constitutional issue as you understand it. Is it – can he allege a violation of the First Amendment if there's probable cause for the arrest? Is that what – is that the way you would frame the First – Yes. Yes. And if probable cause for the search exists and if probable cause existed to seek the still camera, then the officer's conduct in seeking the still camera is lawful regardless of any other First Amendment rights that might have been implicated otherwise. Let me ask you this. Why don't you just frame it – why isn't it just framed did he allege a violation of the First Amendment? He alleged retaliation. I'm not sure how that necessarily – And then you move down the – you move down the analysis and you come into this whole question of probable cause. If he had probable cause, maybe – even if he didn't have probable cause, under the circumstances he reasonably believed that he had probable cause. Well, it's easier to resolve the farther down the associate analysis you go because if the officer at least reasonably believed he had probable cause to seek the still camera, then – See, I'm trying to figure out – I guess what I'm getting at is I'm trying to figure out how do you – in traditional First Amendment retaliation litigation, when you have a mixed motive, the Mt. Healthy analysis, you generally push in. And I'm just trying to figure out why is it so different here when you're dealing with probable cause either to arrest or to search? What makes it so qualitatively different that the Mt. Healthy mixed motive analysis drops out and once you have probable cause, you would automatically say, well, he didn't have a First Amendment violation. You could never demonstrate that he wouldn't have – he wouldn't have pursued the search. The difference, Your Honor, may be that you don't want to create an incentive for people who might be subject to criminal investigation to simply start making comments that otherwise would be protected by the First Amendment and generally are protected simply for the purpose of trying to render unlawful police conduct that otherwise would be justified by probable cause or by other legal principles. Well, maybe the incident is so minor that the police wouldn't have pursued it but for the First Amendment activity. That's a possibility as well. So why should we foreclose that? See, what you're advocating is that the minute there's a finding of probable cause, that's it. The case is over. That is what I'm proposing, and I think that's entirely consistent with Supreme Court case law and with the overwhelming weight of the case on it. That's really strange because that's been a very big concern of mine in reviewing this case. The other side of this, the DUI case, which is not this case, overarches this because this probably wouldn't all happen except that it exploded because of the DUI case interaction with parties. So when he alleges a retaliation to erase it to say this interferes with police work under probable cause, it's a real problem because the whole thing gets all mushed together. And where Judge Paez is, I'm having a hard time saying that the First Amendment thing just kind of evaporates because probable cause popped up. Now, whether there is an issue of the law wasn't clear under these mixed circumstances, I don't know. I mean, if you get down to that level of saucier, but on the upper end of saucier, I don't know. I'm having a problem with that. And the only thing I can add, I think, to that first saucier level is that in the criminal context, the Supreme Court has made it clear that pretextual stop, for example, is not invalid. But that goes to whether or not the Fourth Amendment, the reasons for the stop or the search or whatever in the pure Fourth Amendment analysis. Nonetheless, it does suggest that when you're talking about an officer's subjective motive in making a stop or making an arrest or seeking a search warrant, subjective motive really isn't pertinent. But it is easier, as both of you have suggested, that once we get to the next level of saucier, that's where it's easier to resolve the problem. Well, it's obvious that Reister really explained what he was doing. He was trying to document, because there's this tremendous interaction between Mr. Skoog and the authorities and the police department, he wanted to document. He said, this is a great documentation of what was happening there. He was recording, and this little camera shows it. That's obvious. But this retaliation between these mixed claims of First and Fourth Amendment, as Judge Prior has indicated, it does kind of a mess here. Except Officer Reister is entitled to qualified immunity as long as he reasonably could believe that any retaliatory motive he had wouldn't render his conduct unlawful. Well, that's a different question. I mean, when you get down to that tree, the saucier tree, so to speak, that's a different question. It's a different question, but it's perhaps the easiest way to resolve. That might be the case. Qualified immunity. And that's where you would say the district judge went wrong because he slipped off on that saucier step. Yes, in a sense. Well, the district court, in the most narrow sense, the district court went wrong by concluding that there was, quote, no relationship, unquote, between the still camera and any violation of ORS 165540. But again, the record demonstrates that Mr. Reister reasonably could believe that the still camera would contain evidence that would help corroborate his version of events and would help establish that the plaintiff had violated ORS 165540. The court tells me you have about four minutes. Would you like to save all of that time for rebuttal? I think I would. Thank you. Can you please escort Monty Cutler and Spook? We'll try and do this manually here. All right. Very difficult. At least I don't have to reserve any time. I'd like to go down the saucier tree, if we could, and talk about qualified immunity and those issues. Well, saucier is all about qualified immunity. Pardon? Saucier is all about qualified immunity.  And you start at the top. Would you rather I started at the top? Well, I'm curious. How do you frame the constitutional issue here that we're dealing with with respect to the camera, the still camera? The retaliation claim. Let me say, first of all, we disagree with the district court's limitation of the retaliation claim to the camera. Right. We believe that that simply means there was evidence of retaliation. We should be entitled to pursue it except for items that the court specifically excluded. When we mentioned the camera in briefing, it was simply an example, and the court seized on that and then said, that's the retaliation claim, and we've challenged that. But the way the constitutional analysis should go is, first of all, was there a clearly established constitutional? No, no. What is the constitutional violation you're seeking to establish here? The violation of the First Amendment. The violation of the First Amendment because? To be free from retaliation for asserting your right to the courts. Okay. And that's directly related to the DUI and its investigation of the DUI cause of action that was ongoing at the time, I think. Is that right? Correct. And this lawsuit was also ongoing, but only if there was both a criminal and a civil proceeding relating to the DUI. All relating to that DUI. Correct. Okay. So then the question, next question, if that's the way you frame the issue, then the next question is, was the law clearly established? Yes. There's clearly a right in a number of cases not to be free from retaliation for using access to the courts. I think we've cited Serrano as one of those cases. So that, I think the right to be free from retaliation is clearly established. Where it gets less clear, I think, is as you move down into the court. Right. Okay. So now here, suppose that we would agree with the district court that there was probable cause, both for the initial search warrant and for the stilled camera. What happens then? Then we move into the mixed motive question. And, again, under this court's decision in Gasco and Serrano's Gasco, the analysis when there is, as to whether or not there's probable cause, differs from the analysis as to whether or not there is qualified immunity. Clearly, I believe there's no right to qualified immunity if there is a retaliatory motive. In the summary judgment context, that means if there's evidence of a retaliatory motive, then that question goes to the jury. Well, but suppose the officer reasonably believed that he had probable cause, one, to get the search warrant and to seek authority to seize the items here, the cameras, the still camera, the video camera and whatnot. Why, you know, what law would the officer look to, even though he may have had some other, you know, there was some other motive involved here? Why couldn't he reasonably think that his conduct was lawful? For two reasons. One is there are, I think, five cases that we've cited in our reply brief that say, and I'm sorry I didn't cite them until the reply brief, but, honestly, I couldn't get a concept into a search that worked until I finally did something differently writing that brief. Well, maybe it's that there's not a lot of case law out there on this. I think I may have found them all. I hope so. But there are those five cases that say that a person has a First Amendment right to videotape in a public place. There's another one that says a First Amendment right to videotape the activities of police officers. And then the three others generally support those two ideas. One of them involved, for example, the videotaping of a demonstration and the undercover police officers that were attending the demonstration. And the court held it was in a public place and you have a right to gather news, as they put it, even as a private citizen about police activities because it's something of public interest. But your claim, though, was not that they retaliated against him for taking the video. No. That only goes to whether or not he could have reasonably believed a crime had been committed in the first place. In other words, it goes to whether there was probable cause or whether he could have believed there was probable cause that the crime occurred at all. Well, we know from the Supreme Court's recent cases and from our cases that you look to the conduct the officer was concerned about and you ask whether or not his observations and his facts that he relates for purposes of getting a search warrant would reasonably show a violation of state law here within state law. Right. And, you know, the magistrate seemed to think so. Based on an affidavit that told him over and over again there's been a violation of ORS 165.43-0. I think that's the number of the statute. Well, there was or was not a violation for the purposes of Saussure. There was no violation of the statute cited. The question then becomes was there a violation of this other statute that he could have reasonably believed. Yeah, but that's the distinction of whether there was a wrong statute listed. And there's case law that says we go by it. I mean, unless you want to argue that and we'll go back into that old world. But if you get beyond the fact that the number of the statute or the specific statute is not an issue, and if it has been alleged and if he's investigating this so-called crime, then the only issue we have is the still camera recording this search. Is that right? And that's the only thing that came to us. That is the only thing that survived summary judgment. Exactly. But there's a cross appeal on the other issues that the court certified by way of 54B. Yes. And this issue comes up in the context of the cross appeal as well. But there are two different concepts that look at two different kinds of what could have been the subject of probable cause. At the top or near the top of the Saussure analysis is the question of was there a clearly established constitutional right that there's evidence that the officer violated. That would be the constitutional right to be free from retaliation for using the court system. When you look to determine whether or not the right was clearly established, the court tells us in Saussure that parameters have to be fairly well defined. You don't have to have a case right on point. Right. You have to look at the context. So let me ask you this. What cases would we look at that existed at that time that a reasonably trained officer would have been aware of that showed that his conduct in this kind of situation would have violated Mr. Scoop's First Amendment right? What would you point us to? What's your best case or cases? Serrano's Gasco and the Gasho case. Those two cases both say, and they were both decided prior to the incident, that a person has a right to be free from retaliation for using the courts or exercising their First Amendment rights. In addition, that is the kind of concept that is just simply obvious to any reasonable person without knowing a lot of detail about the case law. And if you look at the Brosseau case, which is the Supreme Court, the rather recent Supreme Court case, it talks about obvious cases. And it's just obvious that you can't use the police power to intimidate someone from exercising his First Amendment right. Well, I take it then, and maybe I'm just too thick, I can't understand your theory, but I take it you're using the First Amendment argument to collapse everything underneath that. In other words, the probable cause and anything related to the incident in the videotaping is collapsed because of the prior relationship with the parties, DUI, the lawsuits involved, and the activities of Mr. Scoop to get to the courts of those. Everything else collapses. If I understand your question correctly. I mean, once they go into the business, and once they go in seeking that videotape, it's collapsed because that's retaliation, and that collapses everything underneath. So you never could get any justifiable reason in any analysis undissociated. You could if there was either actual probable cause or there was a basis for qualified immunity. Well, but you said there's no actual probable cause because the underlying so-called taping incident was bogus. It was retaliation. Now, isn't that disputed by the fact, if I'm correct, that Officer Scoop didn't know about the DUI cases which would produce the retaliation motive until after he had been taped and notified Mr. Scoop that he had taped him, but he knew it after that time. So you're saying if you proceed, even though you were in the store and you were doing the undercover operation, and you didn't know about it, once you proceed beyond that, i.e., go to the business to get the tape, then you're saying now you've intruded because now it's become a retaliatory action versus getting information or material for the so-called underlying taping incident. Is that what you're saying? Let me say exactly what I am saying. First of all, any reasonable police officer would have known that it's not a crime to videotape in a public place. Period. And I can talk about why, but I just want to go through the steps. That means that he'd have to assume then that the statute that he was there to enforce was unconstitutional. Right. And I think there are good reasons why an officer would have known that at that time or should have known that, which I can talk about. But then, knowing that, he then learns of the lawsuit. He then learns that Mr. Scoog was photographing police officers, and then he looks at the video and goes in to seek this warrant and produces the affidavit, knowing all of that. So that's how I believe the analysis should go. Now, backing up to whether he should have known that a crime had not been committed, not only were there those cases saying that videotaping in a public place and videotaping the activities of a police officer are protected by the First Amendment specifically, there's also everyday life. All around us, all you have to do is turn on the television set, and you see events being filmed and broadcast in public areas. There are sporting events. There are news events. There are man-in-the-street kind of shows. All of that happens, and nobody gets arrested. Cameras are running with sound every day in sports stadiums all over the country. Nobody gets arrested for that. The same thing is true of reporters interviewing people on the street. And then on a less broad level, everybody that has a camcorder now indulges in videotaping in public places. They're tourists. They're at parties, whatever. And it just cannot be a crime. At the time of this incident, did any Oregon court, whether court of appeals, Supreme Court, address these constitutional issues that you're alluding to right now or discussing right now with respect to either the statute cited in this search warrant or the later statute relied upon by the district court? No. In fact, there were cases where people had been convicted. There was one case in particular where someone was convicted of audio recording a police officer during her arrest in violation of this statute. So there was nothing saying this statute was unconstitutional. Why would a reasonable officer then think that or should assume that the statute was unconstitutional? Because there is good case law from, I believe, three different circuits saying you have a First Amendment right to videotape in a public place, notwithstanding similar statutes. And there's just the common sense, as the Broso case puts it. It's an obvious case. General guidance should be enough. Any officer should know it's not a crime to go out in a strip mall and videotape. That would be the basis of a decision that we would write? That would be one basis, yes. Based on Broso's statement that in obvious cases there need not be any specific case on point. Your obvious reasons, though, stem from some sort of technological basis. Today everybody does it, and there's more and more technology allowing you to do it, so therefore it's got to be good. I don't think I'd go that far. Well, although you're saying that everybody videotapes everything all the time everywhere, and we're getting all kinds of feedback now, I notice. The kids are getting in trouble with their blogs, and everything is— I agree that technology is pushing in everybody's time, you know, the video cameras, the cell cameras, or whatever. But I understand your argument. Let me ask, does your argument— what if we just simply were to agree that there was probable cause here, the whole thing? What does that do to your argument? If you feel there was probable cause— Yes. Does the case go away? I believe the case goes away. I can't think of any way around that. On the—down at the qualified—as you go down the qualified immunity analysis. Right, I don't think you'd get to qualified immunity if there was actual probable cause, except in the retaliation case where you have the mixed motive analysis. Then, if you found that there was probable cause, but there was also evidence of retaliation, then I think it's up to the prior fact to determine which was the actual motive for the retaliation. But I'm looking for—I was looking for a case that dealt with probable cause retaliation to see what a reasonable officer might find about whether his conduct would be lawful or unlawful. And there weren't a lot of cases out there. I agree. Well, your last statement is going to cause us some great concern, because it seems, though, the Supreme Court, when they adopted Saussure, put a big burden on us. I think that going to the jury was always a preferred method. In fact, there are a lot of cases in our court and other courts that don't like Saussure for that reason. But Saussure put a big burden on that. Let's let it go to the jury. Thank you. All right. I'd like to spend my time talking about whether the law was clearly established when Mr. Royster was engaging in the conduct at issue, made it clear that his conduct would have been prohibited. Do you agree with his analysis of the fact that the law, that it's an unconstitutional law? No, I don't. And in fact, at the time Mr. Royster was seeking the search warrant in this case, the Oregon courts had upheld the constitutionality of ORS 165540 in the face of a variety of state and federal constitutional challenges. I cited State v. Noble at page 15 of my red brief. I don't know for sure that the court addressed the precise First Amendment claim that counsel seems to be making here today. But I also note that the plaintiff did not expressly attack the constitutionality of 165540, either in the district court or in his briefs in this court. That's true. So does that destroy his total argument relative to the fact that the officer shouldn't have, didn't have probable cause because he didn't raise the constitutionality? So obviously then it's just a statute standing alone, right? I mean, I understand what you're saying. I understand what he's saying. So how do we analyze both of those positions? Well, to the extent that plaintiff's argument is based on this supposition that Mr. Royster should have known that the statute itself violated the First Amendment. That's not an issue. And that can't provide a basis for his argument. And more importantly, at the time Mr. Royster was seeking a search warrant, the existing case law, the Second and Eighth Circuits, made it clear that if an officer has probable cause to make an arrest, he is entitled to qualified immunity despite any retaliatory motive he might have that would otherwise implicate First Amendment concern. The counsel argues that in his cross-appeal he addressed what would have been the search and seizure with regard to the ordnance violation. What's before us, if we go with what the judge did on your appeal, the only issue was the still camera photographing what happened when they executed the search warrant. So you'd have to drop down one level on his cross-appeal. So what does his cross-appeal raise for us, and how would you answer his argument on the cross-appeal? With respect to items other than the still camera? Well, yes, because that raises those issues, true. And first of all, I should point out the district court did address plaintiff's more general claim that the mere act of seeking the search warrant was constituted in unlawful retaliation because it was based on a retaliatory motive. But never was there any claim that the statute itself was unconstitutional, which voided entirely, if you will, the whole search. That's correct. So the retaliation comes creeping in all along the line, and so it seems that when you separate the retaliation out, unless you get into a mixed motive logjam, you can separate whatever was said relative to the still camera and the search, and then you get into the retaliation. Correct. And plaintiff has, in his brief, suggested that the seeking of the hard drive and the seeking of the videotapes as part of the search warrant also was a form of retaliation that was unlawful and reflected an unconstitutionally overbroad warrant. But as the district court noted, plaintiff did not appear to make any claims below that addressed anything other than the still camera. Plaintiff didn't challenge the characterization of his argument in the district court. He also didn't challenge that characterization in his appellant's brief in this court. Clerk, you told me your time is up. Thank you. Thank you. Thank you, counsel, for your arguments. We appreciate them, and this matter will be submitted.
judges: Brunetti, T.G. Nelson, Paez